**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 06-00637 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket No. 127] |
| GARY WAYNE ROSS, | |
| Defendant. | |

Before the Court is Defendant's Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33. For the reasons stated below, the Court hereby DENIES the motion.

## INTRODUCTION

The defendant was convicted by a jury on July 28, 2008, for the violation of 18 U.S.C. § 2422(b), attempting to induce a minor to engage in criminal sexual conduct. Mr. Ross challenges the jury verdict pursuant to Fed. R. Crim. P. 33 for the following reasons: (1) the Court gave the jury misleading or inadequate jury instructions with regard to the mens rea requirement, the entrapment defense and the criminal objectives of the alleged enticement; (2) the Court erroneously excluded testimony from Dr. James Herriot regarding the culture of Internet chat rooms; (3) the evidence was insufficient to convict the defendant.

## LEGAL STANDARDS

**I.  Federal Rule of Criminal Procedure 33.**

The Court "may grant a new trial to [the] defendant if required in the interest of justice." Fed. R. Crim. P. 33. The Court enjoys broad powers in determining whether a new trial is warranted. *See United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). The trial court's ruling on a motion for new trial is reviewed for an abuse of discretion. *Id.*

**II. Jury Instructions.**

"Jury instructions, even if imperfect, are not a basis for overturning a conviction absent a showing that they prejudiced the defendant." *United States v. Frega*, 179 F.3d 793, 807 (9th Cir.

1999). Erroneous jury instructions constitute harmless error if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *U.S. v. Cherer,* 513 F.3d 1150, 1155 (9th Cir. 2008)(citing *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1197 (9th Cir.2000)). Omitting an element is harmless if the omitted element is uncontested and supported by overwhelming evidence. *Id.*

### III.  Rules of Evidence.

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other *specialized knowledge will assist the trier of fact to understand the evidence* or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

(emphasis added).

The district court's decision to admit or exclude expert testimony is reviewed for an abuse of discretion and will not be reversed unless "manifestly erroneous." *U.S. v. Hermanek,* 289 F.3d 1076, 1092 (9th Cir. 2002). FRE 702 charges the court with assuring that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Id.* at 1093 (citing *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 597 (1993).

Federal Rule 704 provides:

> (a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.
>
> (b) No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

## ANALYSIS

### I.  The Adequacy and Legal Accuracy of the Jury Instructions

As a threshold matter, the jury instructions that Mr. Ross now contends are inadequate and misleading are, for the most part, those he proposed or jointly submitted with the Government. As discussed below, the Court specifically adopted the defendant's 4-factor entrapment jury

2

instruction. As for the instruction on the "criminal objective of the defendant's alleged enticement," the final jury instruction is almost identical to the one he jointly proposed with the Government. Finally, regarding the two instructions which contain the terms "believed" or "believes," the defendant argues it was prejudicial error to fail to define those terms. However, Mr. Ross did not propose such an instruction, did not raise the issue during the trial, nor did he object to the Court's final draft of the instructions on the elements of the charged offense.

### A.     The Jury Instruction on the Elements of Entrapment.

This instruction was proposed by Defendant:

> In determining whether the defendant was predisposed to commit the crime before being approached by government agents you may consider the following:
>
>    1) the defendant's character and reputation;
>    2) whether the government initially suggested criminal activity;
>    3) the nature of the government's inducement; and
>    4) any other factors related to predisposition.

[Docket No. 110, Defense Proposed Jury Instruction C]. It is identical to the instruction the jury was given at trial and also to the Ninth Circuit Pattern Jury Instruction 6.2. [Docket No. 117, Jury Instructions]. Mr. Ross challenges the instruction as inadequate because it lacked the most important factor: whether the defendant showed any reluctance. The "reluctance factor" is stated in *United States v. Becerra*, 992 F.2d 960, 963 (9th Cir. 1993). In *Becerra*, the Ninth Circuit reviewed a trial court's *refusal* to give an entrapment instruction because the trial court found no evidence of either inducement or lack of predisposition. *Id*. at 964. In discussing what constitutes entrapment, the Court stated that "[i]n evaluating predisposition, we examine five factors:

> (1) the character or reputation of the defendant;
> (2) whether the government made the initial suggestion of criminal activity;
> (3) whether the defendant engaged in the activity for profit;
> (4) whether the defendant showed any reluctance; and
> (5) the nature of the government's inducement.

Although none of these factors alone controls, the most important is the defendant's reluctance to engage in criminal activity." *Id*. Notably, the *Becera* Court did not reverse the defendant's conviction because the Court failed to instruct on "reluctance" but because it failed to instruct *at all*, in spite of evidence to support entrapment. A number of other Ninth Circuit cases state that

1  "predisposition is established only after analyzing five factors" and describe the defendant's
2  reluctance as the most important.  *U.S. v. Davis,* 36 F.3d 1424 (9th Cir. 1994); *U.S. v. McClelland*, 72
3  F.3d 717 (9th Cir. 1995); *see also U.S. v. Gurolla*, 333 F.3d 944 (9th Cir. 2003); *United States v.*
4  *Citro*, 842 F.2d 1149, 1153 (9th Cir.1988).

5  The *Ross* jury received the instruction he proposed.  The jury was instructed to consider "any
6  other factor," which reasonably embraces consideration of any evidence of reluctance.  Mr. Ross
7  contends there was sufficient evidence that he in fact *lacked* the predisposition prior to governmental
8  inducement and if the jury had been instructed on the importance of the "reluctance" element, it
9  would not have found him predisposed in light of the "officer's unrelieved inducement throughout."
10 In support, Ross contends that "[a]part from the chat-room log, there is zero evidence of defendant's
11 predisposition to engage in crime" because, first, there was no evidence that given his "character and
12 reputation" he was the sort of person who had any sexual contact with minors nor that he had
13 previously engaged in sex talk with anyone on the Internet.  He had no previous convictions.  Even
14 though he started out to meet "Nikki," he clearly got cold feet and turned back towards home.
15 [Mot. at 21-22, 25].

16 The second reason Mr. Ross advances is that although he may not have demonstrated
17 reluctance to *talk* about sex with a minor, the record is full of indications that he was reluctant to
18 "engage in crime."  For instance, he argues, shortly after the sting officer ("Nikki") tells him that she
19 is 13 years old, he "backs away" from her suggestion to go ahead and do whatever he wants to do
20 when he tells her "geez, I don't want to go to jail for heaven's sake."  [Mot. p. 24, Chat-room log for
21 3/14/06].  They then chatted for three days before a meeting was discussed.  Ross claims Nikki was
22 the one egging him on, not the other way around.  The fact that they engage in sexually explicit talk
23 for three days, argues Ross, is evidence that though he may be willing to talk, he is reluctant to "go
24 all the way." [Mot. p. 25].

25 The entrapment instruction is only "misleading or inadequate to guide the jury's
26 deliberations" if taken as whole, it does not guide the jury adequately. *Cherer*, 513 F.3d at 1154.  In
27 the *Ross* case, the jury received an open-ended instruction that urged jurors to consider any other
28

4

factor relating to predisposition. That would include the evidence of "cold feet." It is unclear how this instruction could mislead the jury.  Moreover, the defense counsel did not propose at the close of the evidence that Ross' reluctance to engage in crime was such that the jury should receive an explicit instruction.  The defense did not propose the *Becera* factors. The defense has not suggested that the Ninth Circuit model entrapment instruction is legally incorrect. In light of being instructed on the four other factors, the reasonable juror is not left completely in the dark as to what she is required to consider.  The jury instruction on entrapment is legally proper and not misleading.

**B.    The jury instruction regarding criminal sexual activity.**

The indictment specifically incorporated the California sexual offenses into the charged crime so that the grand jury was aware it was charging the defendant with enticing a minor into engaging in unlawful sexual intercourse or oral copulation as proscribed in the California penal code (Mot. p. 27).  The jury instructions did not.  Ross argues there was a failure in the instructions to clearly connect up the sexual offenses with the charged crime, so that it was not made clear to the jury "just what was the 'criminal sexual activity' which the defendant knowingly enticed 'an individual' to 'engage in' as stated in this instruction".

The jury received the following instruction on the charged crime:

[1][b]The defendant is charged in the indictment with using a means of interstate commerce to knowingly attempt to persuade, induce, or entice an individual he believed to be under the age of eighteen (18) to engage in criminal sexual activity. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

(1)    The defendant intended to commit the crime of using a means of interstate commerce to knowingly persuade, induce, entice or coerce an individual he believed to be under the age of eighteen (18) to engage in criminal sexual activity;
(2)    The defendant did something which was a substantial step toward committing the crime, with all of you agreeing as to what constituted the substantial step;
(3)    The defendant used a means or facility of interstate commerce, specifically the internet or the telephone; and
(4)    The defendant was not entrapped.

The jury received this separate instruction on criminal sexual activity:

---

[1]The bold face paragraph markers did not appear in the final jury instructions but are supplied to facilitate the discussion of how the two instructions interact with one another.

5

> **[d]**Persons engaging in the following sexual activity may be charged with a criminal offense under California law:
>
> 1. Any act of sexual intercourse, consensual or not, with a child who is under the age of 18 years, and who is not married to the perpetrator at the time of the sexual intercourse. Any sexual penetration, however slight, constitutes "engaging in act of sexual intercourse."
>
> 2. Any act of oral copulation with a child who is under the age of 18 years. "Oral copulation" is any act of copulating the mouth of one person with the sexual organ or anus of another person.

According to Ross, the jury might have mistakenly concluded he was guilty as charged if he simply engaged in sexually explicit talk rather than enticing Nikki to "engage" in the activity that is described in the criminal activity instruction. Ross suggests that the flaw could have been cured by stating in **[d]:** "For the purposes of **[b]**(1), persons engaging in the following sexual activity may be charged with a criminal offense under California law . . .." [Mot. p. 27].

The extent of Ross' argument is that the two instructions, taken together, were inadequate or misleading. Again, Ross did not object to the instructions. He did not propose the jury be read the actual indictment. Unless the jury had been told that sex talk is criminalized under California law, it is difficult to see how the reasonable juror could come to this conclusion. The jury was given an accurate instruction about what is criminalized in California. A flawed jury instruction is harmless error if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Cherer* at 1155. There is no error in the instruction thus the defendant's argument in favor of a new trial on these grounds is unavailing.

**C. The elements of the offense and the necessity of defining "belief."**

Mr. Ross was charged with violating 18 U.S.C. § 2422(b) which provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States ***knowingly*** persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, ***or attempts to do so***, shall be fined under this title and imprisoned not less than 10 years or for life.

(emphasis added).

The mens rea is "knowingly" and the text of the statute is explicit. "Knowingly" refers to both the verbs – "persuades, induces, entices, or coerces" – as well as the object – the minor. *United*

*States v. Meek*, 366 F.3d 705, 718 (9th Cir. 2004).

However, under 18 U.S.C. § 2422(b), when a defendant, like Ross, has targeted an adult decoy rather than an actual minor, the Ninth Circuit requires that the defendant have believed the target was a minor but does not require "an actual minor victim." *Id* at 717; see also *U.S. v. Cherer*, 513 F.3d 1150, 1154 (9th Cir. 2008)(citing *United States v. Meek*, 366 F.3d 705, 718 (9th Cir. 2004).

Ross challenges the jury instruction as misleading and inadequate because the term "belief" as it relates to his state of mind about Nikki's age was undefined for the jury.

The defense proposed the following instruction:

> The Defendant is charged in the indictment with knowingly attempting to persuade, induce, or entice an individual under the age of eighteen (18) to engage in criminal sexual activity. The Defendant can be found guilty only if the government proves all of the following elements beyond a reasonable doubt:
>
> (1) That the Defendant knowingly attempted to persuade, induce, or entice an individual under the age of eighteen (18) to engage in sexual activity;
> (2) ***That the Defendant believed that such individual was less than eighteen (18) years of age;***
> (3) That if the sexual activity had occurred, the Defendant could have been charged with a criminal offense under the law of California;
> (4) That the Defendant used a means or facility of interstate commerce, specifically the internet or the telephone;
> (5) That the Defendant acted knowingly; and
> (6) That the Defendant was not entrapped.
>
> ***It is not necessary for the Government to prove that the individual was in fact less than 18 years of age; but it is necessary for the Government to prove that the defendant believed such individual to be under that age***.
>
> *Authority:*   *United States v. Cherer*, 2008 U.S. App. LEXIS 1424, 6-7 (9th Cir. 2008);  11th Circuit Pattern Jury Instruction 80;  Ninth Circuit Pattern Criminal Instruction 6.2

[Docket No. 110; Government's Opposition, Ex. 6] (emphasis added).

The defendant's proposed jury instruction on "attempt" also includes the term:

> The defendant is charged in the indictment with attempting to commit the crime of knowingly using a means of interstate commerce to persuade, induce, or entice ***an individual he believed to be under the age of eighteen (18)***  to engage in criminal sexual activity. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:
>
> First, the defendant intended to commit the crime of knowingly using a means of interstate commerce to persuade, induce, or entice ***an individual he believed to be under the age of eighteen (18)*** to engage in criminal sexual activity; and [ . . . ]

7

[Docket No. 110] (emphasis added).

It is true the jury did not get a separate instruction that defined "believe." It was, however, explicitly instructed on the defendant's subjective belief because the Court instructed the jury, verbatim, with the defendant's proposed paragraph:

> ***It is not necessary for the Government to prove that the individual was in fact less than 18 years of age; but it is necessary for the Government to prove that the defendant believed such individual to be under that age***.

[Docket No. 117, Final Jury Instructions].

Ross argues that the word "belief" is susceptible to many definitions. It is a word of many meanings so the jury would have no way of knowing – based on its "ordinary experience" – what it means in terms of a guilty mind. [Mot. P. 11].

In general, if an essential term of the charged crime expresses a concept not within the jury's ordinary experience, the jury must be instructed as to its meaning. *United States v. Golomb*, 811 F.2d 787, 793 (2nd Cir. 1987). Ross contends the definition of "knowingly" is obvious and does not need a definition whereas "believe" or "believed" is far from obvious.

Ross also argues that this Court, in *Meek*s, defined the term "belief" to mean "subjective certitude" for attempt crimes under 2422(b). According to Ross, *Meeks* "explained that the non-statutory term "believed" is the crucial mens rea for an attempt under 2422(b), standing in for the statutory term "knowingly" in the completed crime." [citing to *Meeks*, 366 F.3d at 791]. What the Court said on p. 791 was, in part:

> The statute requires mens rea, that is, a guilty mind. The guilt arises from the defendant's knowledge of what he intends to do. In this case, knowledge is subjective-it is what is in the mind of the defendant. Thus, a jury could reasonably infer that Meek knowingly sought sexual activity, and knowingly sought it with a minor. That he was mistaken in his knowledge is irrelevant. Meek possessed the guilty mind required by the statute.
>
> Meek's crime was an attempted violation of § 2422(b). The attempt provision of this statute underscores Congress's effort to impose liability regardless of whether the defendant succeeded in the commission of his intended crime. It would be contrary to the purpose of the statute to distinguish the defendant who attempts to induce an individual who turns out to be a minor from the defendant who, through dumb luck,

> mistakes an adult for a minor. To hold otherwise would bestow a windfall to one defendant when both are equally culpable.

*U.S. v. Meek*, 366 F.3d 705, 718 (9th Cir. 2004).

The *Meeks* Court did not define the term "believe" for the jury.

Whether one accepts the notion that "believe" is a difficult term for reasonable jurors to understand or not, Mr. Ross never raised this issue before trial, during trial or in the jury instructions conference. The Government cites the following comment by defense counsel from the transcript of the jury instructions conference: "It is funky but that's a crime if he believes it. It is a belief crime." [Gov't Opp'n p. 10; Ex. 8 at 110].

The jury instructions are not inadequate and misleading as a whole because they: (1) correctly express the charged offense; (2) correctly express the Government's burden as to the defendant's mens rea about the age of the minor; and (3) are not misleading and inadequate to guide the jury even if "believe" is not defined because it is a common word that is easily understood by jurors.

**D.      The Sufficiency of the Evidence regarding Ross' belief that Nikki was underage.**

Finally, Ross argues that the record contains evidence that he "was not certain in his own mind that Nikki was a minor" thus the jury could not find that he "believed" Nikki was a minor beyond a reasonable doubt. [Motion, p. 17]. Mr. Ross gives the following reasons in support thereof: (1) he and Nikki were strangers when they met in the Internet chat room; (2) although she told him she was 13, she did not provide proof; (3) the photo she sent him was obviously outdated so Ross lacked visual evidence that she was a minor; (4) when they spoke on the telephone, he told her "you sound a lot older" ; (5) Ross questioned "Nikki's" age during a chat – "it seemed like you are a lot older . . .more like 19 . . very mature."

According to Ross, the jury could have found him erroneously guilty if it thought Ross only had to have a "low degree of belief for mental guilt." The Court is unclear how the jury could be instructed to distinguish between a low or high degree of belief.

9

Ross thinks the jury could have believed that he was just acting out a fantasy and either did not believe or did not *need* to believe Nikki was a minor. This would make his case comparable to *United States v. Gladish*, 536 F.3d 646 (7th Cir. 2008), where the Seventh Circuit reversed a man's conviction for attempted sex with a minor under 2422(b) in a case that also involved an adult decoy posing as a 14 year old girl. Ross argues that his case is controlled by *Gladish*.

Defendant Gladish, a 35 year old man, visited an Internet chat room and solicited "Abagail" to have sex with him. They discussed the possibility of his traveling a far distance to meet her but no arrangements were made. Gladish was then arrested. *Id.* at 648. The Seventh Circuit held: (1) that defendant's conduct did not amount to the substantial step necessary to support a conviction for attempt; and (2) exclusion of the psychologist expert's opinion (that given the defendant's character pathology, it was unlikely that he would act on his fantasies) was improper because it was offered to show that Gladish's chat room conversation was nothing but "hot air."

Judge Posner's view was that the chat room sex talk (e.g. "ill suck your titties" and "ill let ya suck me and learn about how to do that") and defendant's sending "Abagail" a video of himself masturbating was consistent with his having intended to gratify himself vicariously rather than with a live minor.[2] Because there was no evidence that he had ever had sex with a minor before and "Abagail" never gave him proof of her age, "he could not have been sure and may indeed have doubted that she was a girl, or even a woman. He may have thought (this is common in Internet relationships) that they were both enacting a fantasy." *Id*. at 650.

Judge Posner also determined that the trial court should not have excluded expert testimony relevant to how people behave in Internet chat rooms. This leads the Court to Ross' final argument in support of a new trial: the improper exclusion of Dr. Herriot's testimony on Internet culture. The exclusion of the expert testimony in *Gladish* is discussed below, in connection with Ross's challenge to the exclusion of Dr. Herriot's testimony.

---

[2]Judge Posner also thought that treating the sex talk as the "substantial step" was wrong. The facts are different in the *Ross* case because Ross was arrested after he had traveled allegedly to meet Nikki for sex. There was no travel in the *Gladish* case.

10

Ross also argues that the jury did not have sufficient evidence that Ross took a substantial step toward committing the crime.  There was chat room talk to support he wanted to meet Nikki for sex and chat room talk to show some "cold feet."  There was evidence he traveled to meet Nikki and had condoms with him on that trip.  Had Ross not traveled at all, his case would be more like *Gladish* and the jury might have had insufficient evidence that he had taken a substantial step and perhaps convicted on the basis of the sexually explicit talks alone.  But the evidence of travel is critical to distinguish the facts between Ross and *Gladish*.

**II.     The Exclusion Of Dr. Herriot's Testimony As the Basis For New Trial.**

Ross argues that the exclusion of Dr. Herriot's testimony about the culture of chat rooms requires a new trial for 2 primary reasons: (1) the exclusion of testimony about the culture of chat rooms as irrelevant deprives Ross of his Sixth and Fourteenth Amendments of the Constitution; and (2) the evidence was insufficient to permit the jury to find beyond a reasonable doubt that Ross was guilty of attempting to entice a minor to have sex.

**A. The relevance of Dr. Herriot's testimony about the culture of Internet chat rooms.**

In the motion, Ross argues that "the critical disputed element of the charged attempted enticement is whether defendant was subjectively certain that Nikki was actually a 13 year old girl." The Court notes that  the element requires that Ross "believed" Nikki was a minor and the jury received that very instruction.  The term "subjectively certain" is Ross' suggested definition of "believe."  Ross' defense was that "he went along with Nikki's recital that she was under-age because it was part of the internet culture not to challenge someone's identity." [Motion p. 30]. According to Ross, the jury was unable to focus on the essential element – whether Ross believed Nikki was a minor – because of its distaste for smutty talk and the only thing that would have made his defense "more plausible (and defendant more credible and less freakish)" was to hear from someone *other* than Ross himself: specifically, from Dr. Herriot who would have told the jury that this kind of "discourse between consenting players is a commonplace in internet chat-rooms." [Mot. p. 31].

**1. Procedural history**.

11

The following procedural history is important to the analysis of whether the Court excluded Dr. Herriot by a mechanical application of the rules of evidence, or whether Ross failed to establish the relevance of Herriot's testimony, its scope, and the basis for accepting him as an expert. The history is summarized from the Government's Opposition, pp. 2-6.

Motion in Limine.

The Government made a motion in limine to exclude Dr. Herriot's testimony because the Rule 16(b)(1)(C)[3] expert disclosure was inadequate. Ross opposed the motion in limine but also supplemented the disclosure. He stated that Dr. Herriot might testify about the mechanical aspects of using the Internet to communicate and send/receive photographs as well as different types of behavior on the Internet, *i.e.* taking on different personalities, how the anonymity of the Internet affects the way people communicate, how the Internet is used by people to entertain themselves, and how the Internet is a fantasy world where people make up false identities and talk about things they might not otherwise in a face-to-face encounter. [Motion, pp. 2-3; Supplemental disclosures at Docket No. 90].

Hearing on the Motion in Limine and Relevancy Hearing.

At the hearing on the motion in limine, the Court told the defense to give the Government the case names and numbers of Dr. Herriot's prior testimony and his dissertation. Although the Court questioned the relevancy of the proposed expert testimony (*the Court*: "it's not difficult to understand that, or to expect that people on the internet may lie about their gender or may lie about their age or profession or income . . . there's nothing that requires an expert's opinion for them to understand that"), the hearing was held. Dr. Herriot was not present.

The Government emphasized that Herriot was an expert in computer science and it did not object to testimony about the infrastructure and software used on the Internet. However, defense counsel had made it clear that it would like to use Dr. Herriot's testimony about what people do (role

---

[3]Rule 16(b)(1)(c) requires, in part: [this] summary must describe the [expert] witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

12

play, for example) in chat rooms to bolster Ross' credibility should he testify that he was only role-playing and if the Government tried to make him out to be a liar. [Ex. 2, Transcript of Relevancy Hearing]. The Government objected that nothing in Herriot's biography qualified him to testify to people's behavior on the Internet, and the Court agreed. [Ex. 2, pp. 46, 51].

However, even though the Court excluded testimony from Dr. Herriot about the existence of a culture on the Internet, it did so without prejudice, and the defense was told it had until noon the next day to give the Government more information about Dr. Herriot's qualifications. The Court said it would address the issue the next day, before the jury was brought in, but that the *onus was on the defense* to bring it to the Court's attention. [Ex. 2, p. 67-68].

At Trial.

On Day 5 of the trial, the defense prepared to call Dr. Herriot. There had been no revisiting of the Court's ruling to exclude the testimony about Internet culture. At sidebar, the scope of Herriot's testimony was discussed and defense counsel stated that Dr. Herriot would *not* be talking about chat room culture, only logistics of chat rooms. The defense qualified the expert for that limited purpose.

On Day 7, during redirect of Ross, his lawyer asked him about the "rules and conventions" of chat rooms and one-to-one chatting. The government objected that the questions were outside the scope of cross-examination. Defense stated it had filed a motion that morning about eliciting testimony from Ross regarding *his* personal understanding of Internet chat culture. The Court allowed questions that had to do with the defendant's own understanding. [Ex. 4, Day 7 trial transcript]. AUSA Keslie Stewart spoke to Richard Tamor and said the Government would not object to this testimony if the defense agreed not to ask to recall Dr. Herriot. Tamor agreed. [Docket No. 133, Declaration of Keslie Steward in Supp. of Gov't Opp'n]. On the last day of testimony, as soon as Ross stepped down from the witness stand, the defense asked to recall Dr. Herriot to testify about the "rules and conventions" that Ross had testified to. The Court sustained the Government's objection. [Ex. 5, Trial Transcript, p. 3].

13

**2. Exclusion of an expert's testimony as a violation of the Sixth and Fourteenth amendments.**

Ross cites two cases for the proposition that exclusion of "critical testimony" by a mechanistic application of the rules of evidence violates federal due process. In *Chambers v. Mississippi*, 410 U.S. 284 (1973), Chambers was charged with murder and the court did not allow testimony from people who had been told by a different man that he committed the murder. The Supreme Court found that the rejected testimony appeared trustworthy and reliable and because it was critical to the defense and implicated constitutional rights, the hearsay rule should not be applied mechanistically to defeat the ends of justice. *Id*. at 302.

In *Taylor v. Illinois*, 484 U.S. 400, 408 (1988), Taylor was charged with attempted murder. A defense witness was excluded from testifying as a discovery sanction. The Supreme Court stated in general: "[t]he right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact. The right to offer testimony is thus grounded in the Sixth Amendment even though it is not expressly described in so many words." *Id*. at 409. It concluded that while the Sixth Amendment compulsory process clause may be violated by imposition of discovery sanction that entirely excludes testimony of material defense witness, it had not been.

Ross asks the Court to link these cases – about the dangers of violating constitutional rights by the mechanical application of evidentiary rules or the discovery rules – to the *Gladish* case, in which Judge Posner determined that the trial judge had improperly applied Fed. R. Evid. 704(b). [Motion, p. 37].

Ross argues this Court should have found Dr. Herriot qualified as an expert in chat room culture because he had previously testified in both state and federal courts and that FRE 704(b) was applied mechanically to exclude Dr. Herriot. First, just because the Court ruled against Ross on this issue, does not mean that it applied FRE 704(b) mechanically. The Court made its determination on the basis of the defendant's disclosures of Dr. Herriot's biography, resume, dissertation and prior expert testimony. The Court found Dr. Herriot qualified to explain how the Internet works but no

14

basis to find him qualified on the cultural aspects of Internet chat rooms. Second, as recounted in the procedural history, defense counsel proffered the testimony for a limited purpose and the Court permitted it. Defense counsel never renewed the issue of qualifying Dr. Herriot as an expert in Internet culture.

Finally, Ross contends that because Dr. Herriot would have testified that "verbal rallying and masquerading is commonplace in internet chat rooms involving conversations about sex," his expert testimony would have bolstered Ross' credibility when he testified that his smutty talk was just "hot air" and he had no criminal intentions in mind when he chatted with Nikki. [Motion p. 31].

The defense cites cases[4] for the proposition that expert testimony about the culture of Internet chat rooms is purportedly helpful to the jury. The Court has read the cases and whether the testimony is helpful or not is never stated therein; all that we learn is that the jury in those cases has the opportunity to hear the evidence because the expert is admitted. However, Ross argues that the *Gladish* case controls. In *Gladish*, the expert psychologist was excluded from testifying altogether whereas in *Ross*, the expert testified, but only within the scope of his qualifying expertise, computer science, and not internet chat room culture. In *Gladish*, the psychologist had actually examined the defendant and was going to testify how the defendant had a character pathology that kept him at a distance from others in intimate relationships for fear of being ridiculed and rejected. The psychologist had concluded the defendant used the Internet for sexual gratification and that this was common on the Internet. With respect to the trial court judge's exclusion of the expert under FRE 704(b), Judge Posner observed: "in fairness to the district judge, we note that the defendant's lawyer did not make as clear as he should have what the intended focus of the expert's testimony would be. *Gladish*, 536 F.3d at 651. He said the expert would give an opinion that the defendant did not have the "real intent" to have sex with a minor when he really meant the expert would testify that the defendant was "unlikely" to have acted on his expressed intent. *Id.*

---

[4] *People v. Jensen*, 114 Cal. App.4th 224 (2003); *U.S. v. Dwinells*, 508 F.3d 63 (1st Cir. 2007); *Gladish*, 536 F.3d at 651.

15

The parallels with *Gladish* are not so great that a new trial is mandated on the ground that Dr. Herriot's excluded testimony would have changed the jury's outcome or that it deprived Ross of a defense. The Court did not abuse its discretion[5] in excluding the testimony about the culture of chat rooms. The Court gave the defense several opportunities to demonstrate the witness was qualified and the defense never managed to articulate how Herriot's background in computer science and human sexuality would have rendered him qualified to provide expert testimony regarding the culture. His dissertation was discussed at the relevancy hearing and found to be wanting in indicia of expertise about one-to-one chat room conversations.

Moreover, the defense indicated Dr. Herriot's testimony would be offered after Ross testified, if he testified, to corroborate Ross' testimony that he was only role-playing, did not have the requisite belief that Nikki was a minor, and did not knowingly attempt to entice her into having sex with him. FRE 704(b) specifically states that an expert may not "state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone."  The Court properly sustained the Government's objection based on all the information that was given to the Court by the defendant in support of its expert. Therefore, the exclusion was not improper and is not a basis for providing Ross a new trial.

## CONCLUSION

The Court concludes that the jury instructions Mr. Ross challenges as the basis for a new trial are not misleading or inadequate or legally incorrect.  Further, the exclusion of Dr.Herriot's testimony about Internet chat room culture was not improperly excluded as a mechanistic application of FRE 704(b) but was based on the defendant's own disclosures about the expert's background and qualifications as well as the scope of the testimony.  Finally, the defendant has not demonstrated a lack of sufficient evidence on the issues of whether Ross really believed Nikki was a

---

[5] The Court's decision to admit or exclude expert testimony is reviewed for abuse of discretion and will not be reversed unless manifestly erroneous. *U.S. v. Hermaneck*, 289 F.3d 1076, 1092 (9th Cir. 2002).

minor, on whether he was entrapped, or on whether he took a substantial step toward committing a crime to find him guilty of attempted inducement of a minor to have sex.

For the foregoing reasons, the defendant's Motion for a New Trial is DENIED.

IT IS SO ORDERED.

Dated: 11/18/08

*Saundra B Armstrong*

Saundra Brown Armstrong

United States District Judge